## STORNELLI v. UNITED STATES GYPSUM CO.
### No. 165.

Circuit Court of Appeals, Second Circuit.
March 16, 1943.

Writ of Certiorari Denied June 1, 1943.

See 63 S.Ct. 1317, 87 L.Ed. ——.

See, also, Michalek v. United States Gypsum Company, 1 F.R.D. 244; Stornelli v. United States Gypsum Company, 2 F.R. D. 345.

Casper V. Baltensperger and Goodwin, Nixon, Hargrave, Middleton & Devans, all of Rochester, N. Y., and Scott, MacLeish & Falk, of Chicago, Ill. (Wendell J. Brown, of Chicago, Ill., of counsel), for appellant.

William L. Clay, of Rochester, N. Y., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The defendant appeals from a judgment in an action to recover for injuries suffered by the plaintiff while in its employ. Its liability, if any, must be confined to the violation of § 417 of the New York Labor Law because that was all that the judge left to the jury. The plaintiff had worked in the defendant's gypsum mine from some time in 1914 until April, 1930, as a "loader" or "driller." His own testimony, confirmed by that of two fellow workmen, was that during this time, the drifts and headings where he worked were constantly filled with clouds of dust caused by the pulverization of rock by drills and other machinery; and that, being forced to breathe such atmospheres, he suffered a disease of the lungs, known as pneumoconiosis, which was the injury for which he sued. The defendant had set up a large fan at the mouth of the mine, designed to blow the dust out of the galleries and headings, but according to the testimony of the plaintiff's witnesses, it did not do so for various reasons not necessary to detail. Although the defendant denied that dust in any serious amount was left in the mine, upon that issue the verdict is conclusive in the plaintiff's favor. The action was brought in April, 1935, five years after the plaintiff left the defendant's employment. Sub. 6 of § 49 of the New York Practice Act makes three years the period of limitation for "an action to recover damages for * * * a personal injury, resulting from negligence"; and sub. 2 of § 48 makes six years the period for "an action to recover upon a liability created by statute, except a penalty or forfeiture." The first question is which of these periods is the right one; the second question, and the only other one of any consequence, is whether the plaintiff proved that he was injured by breathing dust during the only year for which at most he could recover—from April 1929 to April 1930.

Section 417 of the New York Labor Law, which is applicable to mines, provides that "an air current sufficient to remove smoke and noxious gases and to insure the safety of every employee shall be conducted along every passageway and working place." Air, filled with the dust of powdered rock, is within this language; to deny to it the name of "noxious gas" would disregard the plain purpose of the Act; and indeed, even if we were disposed to be literal, air is a gas, and air filled with finely comminuted particles of rock is a noxious gas, just as air filled with finely comminuted particles of partly burned wood is smoke. That being assumed, we may take Schmidt v. Merchants Despatch Trans. Co., 270 N.Y. 287, 200 N.E. 824, 104 A.L.R. 450, as an authoritative exposition of the applicable period of limitation. That decision turned upon the meaning of sub. 2 and sub. 3 of § 299 of the New York Labor Law; of which the first required "all machinery creating dust or impurities" to "be equipped with proper hoods and pipes connected to an exhaust fan of sufficient * * * power to remove such dust"; and the second required that "suction devices shall be provided which shall remove * * * impurities * * * by means of proper hoods connected to conduits and exhaust fans." The court held that these enactments were for the benefit of those employees who might be exposed to the danger of breathing dust, and that they "created" a "liability" within sub. 2 of § 48 of the Civil Practice Act, as distinguished from giving support to a finding that the employer had failed to exercise the care that he should have: i. e., been guilty of "negligence."

We see no difference between "hoods," "pipes" and a "fan" "of sufficient power" (or "hoods," "conduits" and "exhaust fans," which "shall remove"), and "an air current sufficient to remove smoke and noxious gases," except that in the first the means of producing the "air current" is prescribed, and in the second it is left to the employer. In each case the critical consideration is that the statute has prescribed precautions for the benefit of the employees, which the employer fails to observe at his peril. However careful he may have been, he is liable for any injury resulting from not conforming his behavior to that enjoined; he is made an insurer pro tanto. That creates a different liability from failing to provide employees with a safe place to work: the two may overlap; they may in a given instance coalesce; but they are quite different commands. It is true that we think of that common-law duty as though it were imposed before the event, because it de-

mands only "reasonable" care; but that does not specify the conduct required and creates a duty incapable of being known in advance, and it is ascertained and imposed only retroactively. Our excuse is that it is fair to exact conformity to such a standard because it should be the inherited portion of the actor; although never formulated before—being measured by a unique occasion—he will divine it by intuition. Nor is it derived alone from forecasting the probable course of events, though that enters into it. It involves a matching of human interests: it is "legislation" in parvo. That is not true of duties such as that before us; the conflict of interest has already been resolved; the employer must provide the "air current," cost what it may; the current's power is measured only by what it will do; if it prove not enough to remove the "noxious gases," the employer must pay.

The distinction is well illustrated by Teller v. Prospect Heights Hospital, 280 N.Y. 456, 21 N.E.2d 504, 505, in which the court dismissed the complaint as insufficient in law on its face. It had alleged that the employee had been injured through the employer's failure "to provide anchors" on the frames of windows which he had to clean; but it did not allege that "reasonable care" required these to be installed. Hence it was bad as a declaration at common-law, just because it did not invoke a standard measured by balancing the cost of prevention against the risk to the sufferer. On the other hand the pleader could point to no unconditional and peremptory command that the employers should install anchors. We need not decide whether a statute, which imposed a duty upon employers measured in the same terms that the common-law measures their duty, would "create" a "liability" under sub. 2 of § 48 of the New York Civil Practice Act, or whether the action would remain one "to recover damages for * * * a personal injury, resulting from negligence" under sub. 6 of § 49. Section 417 of the Labor Law has nothing to do with "negligence" in the sense that that word is used in sub. 6 of § 49 of the Practice Act.

There remains only the question whether there was evidence to support a verdict that the plaintiff had suffered any injury from inhaling "dust or noxious gases" between April 1929 and April 1930.

The defendant's argument as to this is that the ailment of which he complained could only be produced by silica dust, and there was no evidence that his lungs had been in the least silicified. There was however ample evidence that he had constantly inhaled dust, that this dust was made of powdered rock, and that, certainly at some places in the mine, silica formed a part of the rock, though only a small part. It was possible for the jury to conclude that constant breathing of the powdered rock, no matter how small a percentage of the dust was composed of silica would result in partially silicifying the lungs; and if there was evidence that it had done so, the conclusion was almost inevitable that this had happened while the plaintiff was in the defendant's employ. That his lungs had been to any extent silicified four doctors and one skiagrapher denied; and they were all well qualified. Against them the plaintiff called only a single doctor, a woman who had however specialized in diseases of the chest. Read in print, her testimony is not indeed impressive, but after a long and thorough cross examination, she persisted in standing her ground that, taking the history of the plaintiff's illness, the X-ray films, the conditions to which he was exposed, and his state of health when she examined him, he was suffering from the dust which he had inhaled, and that he had some silicosis. And, she added, he had more than silicosis. Finally, this condition was aggravated by the dust which he inhaled during the last year of his employment.

■■ But even were there no sufficient basis for the conclusion that the plaintiff had silicosis at all, and were we to throw out the testimony of his doctor altogether, a jury had support in finding that he had a disease of the lungs. How far that disease was caused by breathing dust for sixteen years and how much of the damage was done in the last year, were indeed debatable, but no one could say that reasonable people must deny all connection between them. The jury was clearly entitled to find that during the year in question he had suffered some injury and the amount of the verdict is not reviewable by us at all. Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 483–485, 53 S.Ct. 252, 77 L.Ed. 439.

Judgment affirmed.