## MINYARD v. WOODWARD IRON CO.

### No. 5932.

United States District Court
N. D. Alabama, S. D.

April 9, 1948.

Lipscomb & Brobston, of Bessemer, Ala., and D. G. Ewing, of Birmingham, Ala., for plaintiff.

Dryer & Dryer, of Birmingham, Ala., for defendant.

LYNNE, District Judge.

This cause, coming on to be heard on the 6th day of April, 1948, was tried to the court without a jury by agreement of the parties, heretofore noted in an order of this court entered in this cause on the 19th day of September, 1947. After a full and fair consideration of the evidence adduced by the parties and the oral arguments of counsel, the court now proceeds to make and enter the following findings of fact, conclusions of law and judgment:

Findings of Fact.

1. The plaintiff is a white man, fifty-three years of age as of November, 1947. The defendant is a corporation and has been engaged for more than twenty-six years in the operation of ore mines and sundry other activities.

2. In 1923 plaintiff entered the employment of the defendant and in the intervening years between 1923 and September 13, 1946, he worked at practically all types of mine jobs for defendant in its ore mines. All of these jobs were very dusty, and plaintiff, in the discharge of his duties, was forced to breathe such dust.

3. In 1943 plaintiff commenced to notice progressive dyspnea on exertion. At first he ignored this symptom and continued to work at his job in the mine. During this time he developed an irritating cough which was at first nonproductive except for red ore dust but later it contained much purulent material. The dyspnea and cough became so severe that he reported to defendant's Doctor Denson for treatment. He was examined by Doctor Denson and sent to Doctors Meadows and Kesmodel, expert radiologists, to have his chest X-rayed. The radiograms made by Doctors Meadows and Kesmodel on March 19, 1943, disclosed that plaintiff then had silicosis, nodular type, which fact was reported to Doctor Denson. Doctor Denson informed the plaintiff that he had silicosis, a dust disease of the lungs. Plaintiff was told by Doctor Denson that if he should remain in the open air for a period of approximately six weeks, he might, after the expiration of such period, re-enter the mines and work therein with safety to his health. Defendant thereupon removed plaintiff from the mines and placed him on light manual labor around the furnaces above ground. At the expiration of approximately three months, during which he had noticed greater physical comfort in his new occupation, plaintiff was informed by the defendant that he might remain at this work but at decreased compensation. Thereupon plaintiff informed defendant that it would be necessary for him to sever his long association with it but was told that the defendant needed him in its Pyne mine.

4. From and after November 24, 1945, plaintiff worked in defendant's Pyne mine and was engaged in mining therein and recovering therefrom an ore or mineral commonly known as red iron ore, which ore contained a large quantity or percentage of silica. Plaintiff performed his duties in and about development and loading operations in defendant's Pyne mine in an environment which was extremely dusty. During the last ten months of his employment by defendant, plaintiff's dyspnea increased markedly, his cough became much worse and he noticed a rapid failing of his health. His cough was very produc-

tive and almost continuous, especially at night. Because of this constant annoyance at night, he was unable to obtain necessary rest. He lost his appetite and frequently, while at work, vomited during the day. He lost in weight from one hundred and thirty-five pounds to one hundred and twenty-two pounds. His cough and dyspnea became so severe that he finally quit his job on September 13, 1946, even though, for economic reasons, he tried to keep his job as long as possible. Since November, 1946, plaintiff has operated a small sandwich shop in Fort Worth, Texas. In this business, his wife cooks and prepares food and he serves it to the customers. From this business the two of them realize a profit of about twenty-five dollars per week. During the last twelve months of his employment by defendant, plaintiff's average weekly earnings were approximately sixty dollars per week. Except during the period of his employment by defendant, plaintiff has never worked in an occupation in which he was exposed to dust containing silica in harmful concentration.

5. From November 24, 1945, to September 13, 1946, defendant operated its Pyne mine with three shifts each twenty-four hours, six days per week. Blasts were set off in the mines at the end of each shift and the miners of the next shift were in their places of work within approximately forty-five minutes thereafter. The ventilation in the mines was wholly inadequate to remove the dust following upon the explosions within such period of forty-five minutes. The only means for allaying the dust provided by defendant was a hose containing water only, frequently at inadequate pressure. No nozzle was provided for spraying the water on the muck and the miners were required to place their thumbs over the end of the hose in order to obtain a spray. No "wetting agent" was provided by defendant in the water. Canvas tubings carried compressed air to a position not closer than one hundred and fifty feet to the place wherein plaintiff was performing his duties. At frequent intervals this canvas tubing was punctured in numerous places and the damage was not repaired for several days, thus diminishing the effectiveness of the compressed air.

6. Plaintiff was not provided with a respirator nor was he informed that defendant would provide respirators for its miners at their request.

7. Exposure to silica dust of pathogenic quantity and pathogenic size is not normally incident to and to be expected of employment in red iron ore mines except as such exposure is created by the negligence of the employer. Silica dust of such quantity and size was present in defendant's iron ore mines but its presence was not known to plaintiff nor was its nature and character so obvious that plaintiff would naturally and reasonably have known of it or the risk and danger incident thereto.

8. The dust in defendant's Pyne mine at the place where plaintiff worked from November 24, 1945, to September 13, 1946, did contain free silica of pathogenic quantity and pathogenic size. Plaintiff was exposed to this dust, did inhale it; his silicotic condition was aggravated thereby and at least one-third of his present disability, which is sixty per cent permanent, is attributable to his inhalation of silica dust from November 24, 1945, to September 13, 1946.

9. At all times from 1923 to September 13, 1946, and more particularly during the period from November 24, 1945, to September 13, 1946, certain methods and processes for reducing harmful concentrations of dust in its mines were available to the defendant. Such measures, though entailing additional expense, were feasible and reasonable to employ. These methods and processes included the employment of wetting agents, the use of a water curtain, the use of a misting process, an increase in the interval between shifts and provision for more adequate ventilation. In exercising due care for the safety and health of its employees the defendant could have and should have made provision for periodic medical examination of its employees engaged in dusty operations and could have and should have furnished such employees with approved respirators where the dust could not properly have been allayed. Failure of defendant to adopt and use methods and processes designed to eliminate, as far as possible, or to reduce to harmless concentration the dust in the breathing zone

of its workers in its mines constituted a breach of the duty it owed plaintiff and plaintiff's injury to the extent aforesaid proximately resulted therefrom.

10. The defendant reserved to its policy making body the means and methods to be employed by it in maintaining the safety of the place where plaintiff discharged the duties of his employment and did not commit its performance to agents, whether competent or not. Defendant breached its duty to exercise due care to provide a reasonably safe place, having regard to the kind of work involved, in which plaintiff, as its employee, might do the work assigned to him and the further duty of maintaining the safety of the place, reserved to itself as aforesaid, and as a proximate result of such breaches, the plaintiff sustained an injury between November 24, 1945, and September 13, 1946, to the extent found in Finding of Fact No. 8 above.

11. On February 12, 1947, plaintiff's chest was X-rayed by Doctor McLester. According to the testimony of Doctor Kesmodel and Doctor McLester, a comparison of the radiogram made on March 19, 1943, and that made on February 12, 1947, does not disclose to the naked eye unaided by accurate measurement any significant change in the size of the nodules in plaintiff's lungs. However, on March 10, 1947, Doctor Friedman made a complete physical examination of plaintiff, including a radiogram of his chest, which resulted in a diagnosis as follows: 1. Far-advanced bilateral silicotuberculosis. 2. Tuberculous tracheobronchitis. 3. Bronchiectasis. 4. Emphysema. 5. Rhinitis. There was no medical testimony to the effect that plaintiff's silicosis had not progressed or become aggravated between March 19, 1943, and February 12, 1947.

12. Plaintiff's silicosis and the resulting disability described by the diagnosis in Finding of Fact No. 11 above does not constitute an occupational disease in that it did not result from the ordinary and generally known risks incident to the particular employment of plaintiff and his long continued work therein.

13. Plaintiff was not guilty of contributory negligence which proximately contributed to his own injury nor did he assume the risk of a dust hazard in his employment by defendant.

14. The sum of Ten Thousand Dollars ($10,000) is a fair and reasonable sum to award plaintiff to compensate him for the injury sustained by him as a proximate result of the negligence of the defendant, as aforesaid, between November 24, 1945, and September 13, 1946.

Conclusions of Law.

1. The court has jurisdiction of the cause of action and of the parties herein.

2. The defendant was negligent between the dates of November 24, 1945, and September 13, 1946, in failing to use due care to furnish and provide plaintiff with a reasonably safe place in which to work and perform his duties as its employee and to maintain the safety of such place. Plaintiff sustained an injury as a proximate result of such negligence, for which he has a cause of action in Alabama under the authority of Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530.

3. Plaintiff's injury, to-wit, silicosis and its consequent disability did not appear suddenly, violently or by accidental means, but gradually appeared to grow progressively worse and was the proximate result of defendant's continuous tort in the breach of its duty to plaintiff, as aforesaid, from 1923 until September 13, 1946.

4. The Alabama one-year statute of limitations, Code of Alabama 1940, Title 7, Section 26, is applicable, in that said statute began to run from the last date on which plaintiff inhaled silica dust while employed by defendant, which was the 13th day of September, 1946. Cf. Michalek v. United States Gypsum Co., 2 Cir., 76 F.2d 115.

5. Under pertinent decisions of the Alabama courts, a recovery may be had for injury resulting from a continuous tort subject to the limitation that only damages which occurred within the period of limitations may be recovered, provided that the damages sustained within the statutory period are separable from those that are barred under the statute by the lapse of time. American Mutual Liability Ins. Co. v. Agricola Furnace Co. 236 Ala. 535, 183 So. 677; Howell v. City of Dothan, 234

418

Ala. 518, 174 So. 624; Lehigh Portland Cement Co. v. Donaldson, 231 Ala. 242, 164 So. 97. Cf. Michalek v. United States Gypsum Co., 2 Cir., 76 F.2d 115; Stornelli v. United States Gypsum Co., 2 Cir., 134 F.2d 461.

6. The factual situation in this case suggests that plaintiff is entitled to prevail upon the theory stated substantially in Count A of his complaint, added by amendment allowed and filed on April 6, 1948. The court is content to rest its judgment in favor of the plaintiff upon this aspect of plaintiff's claim. Of course, this conclusion as to liability rests in part upon the validity of the court's finding that defendant did not attempt to discharge its duty of maintaining the safety of the place wherein plaintiff was employed by committing its performance to agents carefully selected for competency and fitness (Finding of Fact No. 10 above). Cf. Langhorne et al. v. Simington, 188 Ala. 337, 344, 66 So. 85, 87; Whitmore v. Alabama Consolidated C. & I. Co., 164 Ala. 125, 51 So. 397, 137 Am.St.Rep. 31; Sloss-Sheffield Steel & Iron Co. v. White et al. 187 Ala. 605, 65 So. 999; Woodward Iron Co. v. Maxey et al. 200 Ala. 555, 76 So. 913; Hardy v. City of Dothan et al., 234 Ala. 665, 176 So. 449.

7. Because of the possibility that the court's Finding of Fact No. 10, supra, might be set aside as being clearly erroneous, notice is taken of the provisions of the Industrial Relations Act of Alabama of 1939, Code of Alabama 1940, Title 26, Section 12, with respect to the duties of employers as to safety. Plaintiff's theory, as stated in Count 3 of his complaint, is that this statute furnishes a foundation for recovery in this case irrespective of negligence. Cf. Michalek v. United States Gypsum Co., 298 U.S. 639, 56 S.Ct. 679, 80 L. Ed. 1372. But whether this statute be held to create a civil remedy in favor of the injured employee or whether a violation thereof would be evidence, per se, of negligence for which the defendant might be found liable under the facts in this case, is of no particular moment here, since neither the measure of damages nor the applicable statute of limitations would be affected by the one construction or the other. Under either view, the effect of the statute was to enlarge the common law duty of the employer, as it formerly obtained under the judge-made law of Alabama, and to impose upon the employer in the operation of mines an absolute personal duty of maintaining the safety of such places of employment. The Supreme Court of Alabama has never construed this statute or had occasion to sustain its validity against the charge that it is void for uncertainty or for failure to prescribe a standard so definite, fixed and understandable as to permit a compliance therewith by one who desires to meet its requirements. Since this court does not deem application of the above statute necessary to a decision in this case, the court forbears to pass upon its validity and to attempt its construction.

8. Plaintiff is entitled to recover of the defendant the sum of Ten Thousand Dollars ($10,000) as damages.

Judgment.

It is ordered, adjudged and decreed that plaintiff have and recover of the defendant the sum of Ten Thousand Dollars ($10,000) together with the costs of court in this behalf expended, for all of which execution may issue.