**Charles W. FROUST**

v.

**COATING SPECIALISTS, INC., et al.**

**Charles W. FROUST**

v.

**COATING SPECIALISTS, INC.**

**Civ. A. Nos. 70-2747, 71-302.**

United States District Court, E. D. Louisiana.

July 25, 1973.

John R. Flowers, Harris M. Dulitz of Ungar, Dulitz & Martzell, John R. Martzell, T. A., New Orleans, La., for plaintiff.

Rudolph R. Schoemann of Schoemann & Ducote, Edward P. Lobman, of Sessions, Fishman, Rosenson, Snellings & Boisfontaine, John Bolles of Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for defendant.

CHRISTENBERRY, District Judge.

Plaintiff sued his employer, Coating Specialists, Inc., and various insurers of his employer for damages under the Jones Act and the General Maritime Law, alleging that because of negligence of his employer and unseaworthiness of its equipment he contracted silicosis while employed as a sandblaster and spray painter at various times between March, 1959 and April, 1970. He brought a separate action against his employer for maintenance and cure.

The various insurers answered and denied coverage. Coating Specialists, Inc.,

("Coating") also answered and filed third-party claims against these insurers. The actions were consolidated for trial.

Prior to trial, all parties stipulated that plaintiff was a seaman, employed by Coating as a sandblaster and spray painter at various times from March, 1959 through April 7, 1970; that he contracted silicosis during the aforesaid period; that it was proximately caused by negligence on the part of Coating and unseaworthiness of its sandblasting equipment; and that plaintiff was entitled to damages in the amount of $175,000, plus certain specified fees and costs, and was due no further payment for maintenance or cure. Judgment was entered on this stipulation, in favor of plaintiff and against Coating, with the question of liability of the defendant insurers reserved for trial by the Court without the intervention of a jury.

Now, after due consideration of the evidence and the arguments and briefs of counsel, the Court finds that plaintiff, Charles W. Froust, is entitled to judgment against defendant Coating Specialists, Inc., and its insurer at the time of manifestation of the silicosis, Steamship Mutual Underwriting Association, Ltd. The Court further finds that defendants Great American Insurance Company, Westchester Fire Insurance Company, North River Insurance Company, Insurance Company of North America, Harbor Insurance Company, Certain Underwriters at Lloyds of London and Employers' Liability Assurance Company of Boston are entitled to dismissal of the claims against them and, in connection therewith, enters the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. The process of sandblasting calls for the direction of sand under high pressure against a surface to be cleaned. As the sand disintegrates, acting as an abrasive to clean the surface, a cloud of finely fragmented sand called free silica or silicon dioxide is produced. Inhalation of the silica particles into the human lungs can lead to silicosis.

2. Silicosis is a condition that is characterized by nodulation of tissue and development of fibrosis in the lungs.

3. While employed by Coating, plaintiff's duties consisted of sandblasting or spray painting either as a helper, mechanic [1] or foreman. His exposure to silica commenced on the first day of his employment on which sandblasting was done and continued throughout his various periods of employment with Coating until he left Coating on April 7, 1970.[2]

4. Plaintiff's prolonged exposure to silicon dioxide caused and aggravated the silicosis from which he now suffers.

5. During the period April 24, 1969 until April 24, 1970, Steamship Mutual Underwriting Association, Ltd. ("Steamship Mutual") insured Coating under a protection and indemnity policy against legal liabilities such as herein asserted. The other defendant insurance companies ("prior insurers") insured Coating under workmen's compensation and employer's liability policies during various other periods from March, 1959 until April 24, 1969, the date that the coverage afforded by Steamship Mutual became effective.

6. All of the policies of the prior insurers contain (either directly or, in the case of the excess insurers, by incorporation of the terms of the underlying policies) an insuring agreement as follows:

"APPLICATION OF POLICY

This policy applies only to injury (1) by accident occurring during the policy period, or (2) by disease caused

---

[1]. The term "mechanic" is used to designate one who does the actual sandblasting or painting.

[2]. Although defendant employer effected a change in the protection afforded to the sandblasters during this period, i. e., canvas hoods were supplanted by air-fed hoods in 1969, the testimony established that even with this new equipment his exposure to silica was sufficient to have caused or aggravated the condition.

or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period."

7. All of the policies of the prior insurers also contain the following provision:

"Bodily Injury by Accident; Bodily Injury by Disease.

The contraction of disease is not an accident within the meaning of the work 'accident' in the term 'bodily injury by accident' and only such disease as results directly from a bodily injury by accident, is included within the term 'bodily injury by accident.' The term 'bodily injury by disease' includes only such disease as is not included within the term 'bodily injury by accident'."

8. Plaintiff's last exposure to conditions causing or aggravating the silicosis occurred on April 7, 1970, on which date he quit working for Coating Specialists, Inc. because of the progress of the silicosis.

## CONCLUSIONS OF LAW

1. The threshold consideration in reaching a determination of which insurer or insurers cover Coating's liability is whether silicosis is an "injury by accident" or "injury by disease." If silicosis is an "injury by disease," then the prior insurers are entitled to judgment of dismissal as a matter of law, under the clear language of the insuring agreement upon which they rely.

2. In the first place, silicosis is generally understood, by laymen as well as by medical men, to be an insidious disease. For example, Webster's Third New International Dictionary defines silicosis as a condition of massive fibrosis of the lungs, marked by shortness of breath and resulting from prolonged inhalation of silica dust, and Schmidt's Attorneys Dictionary of Medicine de-

fines silicosis as a disease of the lungs caused by the prolonged inhalation of dust derived from sand, stone, etc. In addition, silicosis is listed as an occupational disease in workmen's compensation laws, (e. g., La.R.S. 23:1031.1) and a contention that it is the result of bodily injury by accident was rejected by the United States Supreme Court in Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949). Moreover, in this case, Dr. Morton N. Ziskind, Professor of Medicine in charge of the Pulmonary Diseases Section, Department of Medicine of Tulane University, directly testified that silicosis is a disease, that it is an occupational disease and that he could not think of a situation in which it would not be an occupational disease.

3. Under the clear terms of their insuring agreements, therefore, the policies of the prior insurers do not apply in this instance because silicosis is an injury by disease and "the last day of the last exposure, in the employment of the insured, to conditions causing the disease" occurred during April, 1970, well after the policy period of any of the prior insurers.

4. On the other hand, the last exposure to conditions which caused or aggravated the disease occurred during the period of coverage provided by Steamship Mutual and it was during this period that the disease manifested itself. Steamship Mutual must indemnify Coating Specialists, Inc.

5. Therefore, judgment has been entered in favor of plaintiff and against defendants, Coating Specialists, Inc., and Steamship Mutual Underwriting Association, Ltd. in the full sum of One Hundred Seventy-five Thousand ($175,000) Dollars, plus the fees and costs specified in the judgment previously entered herein, together with legal interest at the rate of 7% thereon from date of judgment until paid. Judgment has also been entered dismissing with prejudice plaintiff's claims against Great American Insurance Company, Westchester Fire Insurance Company, North River

Insurance Company, Insurance Company of North America, Harbor Insurance Company, Certain Underwriters at Lloyds of London, and Employers' Liability Assurance Company of Boston.