COMMERCIAL UNION ASSURANCE COMPANY, Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY et al., Defendants.

Civ. A. No. 77–412–T.

United States District Court, S. D. Alabama, S. D.

June 7, 1979.

Grey Redditt, Jr., Ben H. Kilborn, Mobile, Ala., for plaintiff.

Norman E. Waldrop, Jr., W. Boyd Reeves, Mobile, Ala., for American Mutual Liability Ins. Co. et al.

Peter V. Sintz, Robert G. Kendall, Mobile, Ala., for Pulmosan Safety Equipment Corp., Inc.

Robert H. Smith, Mobile, Ala., for Mission Ins. Co.

James J. Duffy, Jr., E. L. McCafferty, III, Mobile, Ala., for Transamerica Insurance Co.

Michael D. Knight, Mobile, Ala., for Zurich American Ins.

James C. Wood and J. Randall Crane, Mobile, Ala., for defendants Thomas Simmons, deceased, Albert A. Love, and Albert Johnson.

James H. Crosby, Mobile, Ala., for Clemco Industries.

Frank McRight, Benjamen T. Rowe, Mobile, Ala., for Employers Reinsurance Corp.

## ORDER

DANIEL HOLCOMBE THOMAS, District Judge.

This matter came on to be heard on May 18, 1979, on motion for summary judgment filed by defendants, Transamerica and Employer's Reinsurance. After oral argument the matter was taken under submission.

This is a declaratory judgment action filed by Commercial Union Assurance Companies (Commercial Union) against a number of insurance companies including Transamerica and Employer's Reinsurance. The declaratory judgment action seeks a judicial determination of the rights and liabilities existing among the insurance companies with respect to the underlying suits brought by Thomas Simmons (Civil Action No. 75–19–T), Albert Johnson (Civil Action No. 75–20–T) and Alfred Love (Civil Action No. 75–147–T). The relief prayed for by Commercial Union is that each of the insurance companies, including Commercial Union, be ordered to participate in costs of defense and contribution toward satisfaction of judgments, if any, returned in the Simmons, Johnson and Love suits.

The damage suits brought by Simmons, Johnson and Love allege that each plaintiff, while an employee of Bender Welding & Machine Company or Bender Ship Repair, developed silicosis as a result of defective respirators, sandblasting hoods and other sandblasting safety equipment, manufactured or distributed by Clemco Industries, Inc., defendant in each of the damage suits, and sold to Bender during a period from 1956 through 1974. Clemco was an insured of Commercial Union at the time the suits were filed and when Simmons, Johnson and

Love were last employed by Bender and an alleged insured of the other insurance companies during their employment with Bender.

With respect to Alfred Love, the evidence establishes that he worked for Bender from 1956 to April 26, 1973, and was exposed during that time to conditions allegedly causing his silicosis. In answer to interrogatories, Love stated that his condition became symptomatic on the day he last worked for Bender, April 26, 1973. The date of his last exposure to conditions allegedly causing the disease is April 26, 1973. Love filed suit against certain defendants for damages resulting from his condition on August 22, 1973. With respect to Albert Johnson, his complaint alleges that he worked for Bender from 1959 until October 3, 1972, during which time he was exposed to conditions allegedly causing silicosis. In answer to interrogatories, he stated that he was not aware he had silicosis until approximately December 1, 1972, although he probably had it as far back as April or May of 1968. His suit against certain defendants for damages was filed on August 20, 1973. The date of his last exposure is the date he last worked for Bender. Both Johnson and Love added Clemco Industries, Inc., as a defendant to their damage suits by amendment on or about December 9, 1975. With respect to Thomas Simmons, now deceased, answers to interrogatories indicate employment with Bender from January 18, 1966, to March 29, 1974, which was the date of his last exposure to conditions allegedly causing his silicosis. Although suit was filed on December 27, 1974, Clemco was not added as a defendant until December 10, 1975.

During the period in question the evidence indicates that the following pertinent insurance policies issued by the various insurance company defendants, their effective dates and named insureds were:

| POLICY PERIOD | INSURER | POLICY NO. | INSURED |
|---|---|---|---|
| 1/31/59–1/31/60 | Zurich American | 80–39–236 | Clemco Industries |
| 1/31/60–1/31/61 | Zurich American | 81–01–375 | Clemco Industries |
| 2/1/61–2/1/62 | Transamerica | CPC–235557 | Clementina Ltd.* |
| 2/1/62–2/1/63 | Transamerica | CPC–52532927 | Clementina Ltd.* |
| 2/1/63–2/1/64 | Transamerica | CPC–53199951 | Clementina Ltd.* |
| 2/1/64–2/1/65 | Transamerica | 4 CGL 29041 | Clementina Ltd.* |
| 2/1/65–2/1/66 | Transamerica | 4 CGL 92219 | Clementina Ltd.* |
| 2/1/66–2/1/67 | Transamerica | 4 CGL 165758 | Clementina Ltd.* |
| 2/1/67–2/1/68 | Transamerica | 4 TAL 4020873 | Clementina Ltd.* |
| 6/25/65–2/1/68 | Employers Rein. | U–3895 | Clementina Ltd.* |
| 2/1/68–2/1/69 | Transamerica | 4 TAL 4086256 | Clementina Ltd.** |
| 2/1/69–2/1/70 | Transamerica | 4 TAL 4195532 | Clementina Ltd.** |
| 2/1/70–5/1/70 | Transamerica | TAL 5132400 | Clementina Ltd.** |
| 5/1/70–8/1/70 | Mission Ins. | HAC – 20170 | Clementina Ltd.** |
| 2/1/68–2/1/71 | Employers Rein. | U–6112 | Clementina Ltd.** |
| 8/1/70–8/1/73 | Emp. Comm. Un. | CLEF–9327–001 | Clementina Ltd.*** |
| 8/1/73–8/1/76 | Comm. Union | CLEF–9327–006 | Clementina Ltd.**** |

\* a general partnership

\*\* F. A. J., Inc., d/b/a Clementina Ltd., a corporation; Clemco-Clementina Ltd., a partnership; and Clementina Ltd., a general partnership

\*\*\* F. A. J., Inc., d/b/a Clementina Ltd., a corporation; and Clemco-Clementina, a general partnership

\*\*\*\* F. A. J., Inc., d/b/a Clementina Ltd., a corporation; Clemco-Clementina, a general partnership; Clemco, Inc.; Clemco International Sales Co., a corporation; and Clemco International, a partnership

Defendants argue that neither Love, Johnson, nor Simmons were injured during the period covered by their respective policies. Defendants contend that the date of injury from silicosis is the last day of exposure and since the last day of exposure occurred after the policy periods in question there is no coverage. Transamerica's pertinent insuring clause reads in part as follows: [1]

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence.

The policy defines the word 'occurrence' as follows:

"Occurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage.

Additionally, the policy provides the following concerning policy period, stating:

### VII. POLICY PERIOD

This insurance applies only to bodily injury or property damage which occurs: (1) for Coverages A, B, C and D, during the policy period within the policy territory.

Defendants argue that the above provisions are essentially identical to the provisions in question in *Utica Mutual Insurance Co. v. Tuscaloosa Motor Co.*, 295 Ala. 309, 329 So.2d 82 (1976). In that case a declaratory judgment ruling was sought to determine which carrier, if not both, was obligated to provide coverage to Tuscaloosa Motor Company in lawsuits brought against it for alleged negligent repairs to automobiles. The facts in the underlying lawsuits demonstrated that Tuscaloosa Motor Company had made repairs during the period when Utica had in effect a policy insuring Tuscaloosa Motor Company. In each instance,

however, damage and injury to the automobiles repaired occurred during the period of time subsequent to the effectiveness of the Utica policy and during the period when Auto-Owner's policy was in effect. *The question presented the Alabama Supreme Court on appeal was whether the Utica policy covered liability for negligent repairs performed during the policy period but where bodily injury or property damage occurred only after expiration of Utica's policy period.* In ruling in favor of Utica, the Alabama Supreme Court held, as follows:

The clear meaning of the policy language is that coverage is afforded only when bodily injury or damage to or loss of property is suffered during the policy period irrespective of when the negligent act was performed which later resulted in such bodily injury or damage to or loss of property . . .

Based upon this conclusion we must enforce the policy as written and may not indulge in construction favorable to the insured. [citations omitted]. Since the bodily injury and loss of or damage to the property did not occur during the policy period, Utica's policy does not afford coverage.

The *Utica* case, relies on the language contained in the policy under consideration and in the *Utica* case the following pertinent language was deemed unambiguous, unequivocal and conclusive on the issue presented:

The insuring clause in Utica's policy read: 'The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

G. bodily injury or,

H. property damage

to which this insurance applies, caused by an occurrence and arising out of garage operations . . .

An '*occurrence*' was defined in the Utica policy as:

'. . . *an accident* . . . *which results, during the policy period, in bodily*

---

1. Similar provisions appear in all of the policies in question.

*or property damage* neither expected nor intended from the standpoint of the insured;'

In the 'Policy Period; Territory' Section, the Utica policy read:

This insurance applies only to *bodily injury*, property damage or loss *which occurs during the policy period* . . . (Emphasis added)

Under the factual situation in the instant case, defendants argue that in the case of a continuing injury, such as silicosis, the "bodily injury occurs on the date of the employee's last exposure to the condition causing his injury and since the policies in question all expired before the date of the employee's last exposure there is no injury within the coverage period.

■ It is the law of the State of Alabama and most jurisdictions that for the purposes of applying appropriate statute of limitations, in the case of a continuing disease or injury, the date of the injury is the last day on which the plaintiff was exposed to the dangerous conditions. *Garrett v. Raytheon Co., Inc.,* 368 So.2d 516, 13 A.B.R. 520 (Ala.1979); *Garren v. Commercial Union Ins. Co.,* 340 So.2d 764 (Ala.1976); *Minyard v. Woodward Iron Co.,* 81 F.Supp. 414 (N.D.Ala.1948), *aff'd* 170 F.2d 508 (5th Cir. 1948).

■ However, this Court concludes that cases dealing with the determination of the date or occurrence of a continuing injury or disease for the purpose of applying appropriate statute of limitations are not controlling for the purposes of determining insurance coverage. *Insurance Co. of North America (INA) v. Forty-Eight Insulations, Inc.,* 451 F.Supp. 1230 (E.D.Mich.1978) In *INA,* the Court held that the controlling factor is the insuring agreements in the various policies.

Relying on *Froust v. Coating Specialist,* 364 F.Supp. 1154 (E.D.La.), *aff'd,* 494 F.2d 1352 (5th Cir. 1974), defendants maintain that their respective policies exclude coverage. In *Froust,* suit was brought by an employee against the employers' insurers under the Jones Act and the General Maritime Law alleging that because of his employer's negligence and the unseaworthiness of its equipment, he contracted silicosis while employed as a sandblaster and spray painter. The plaintiff in that case proceeded directly against the employers' insurers who had policies covering the entire period of exposure to silicosis. All of the policies of the insurers contained an insuring agreement as follows:

Application of Policy

This policy applies only to injury . . by disease caused or aggravated by *exposure of which the last day of the last exposure,* in the employment of the insured, *to conditions causing the disease, occurs during the policy period.* (Emphasis added)

364 F.Supp. at 1155, 1156

Relying on "the clear language" of the above insuring agreement, the Court dismissed the suit against all insurers except the one covering the period when the plaintiff was last exposed. Unlike the *Froust* case the policies in question in the instant case do not have any express provisions which limit coverage to "exposure of which the last day of the last exposure . . . occurs during the policy period." The policies in question provide coverage for "injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage". The continuing nature of the disease suggests that there was some bodily injury prior to the last date of employment and within the policy periods in question.

■ However, by the terms of the policies the insurance companies agreed to pay on behalf of the insured "all sums which the insured shall become *legally* obligated to pay as damages." With respect to continuing injuries, under Alabama law, a plaintiff's recovery is limited to damages which occurred within the applicable limitation period. Section 7–2–725 of the Code of Alabama (1975) provides:

(1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued . . . .

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered; however, a cause of action for damages for injury to the person in the case of consumer goods shall accrue when the injury occurs.

The above section provides a four year limitation period with the two exceptions: (1) express warranties extending to future performance of the goods and (2) personal injury in the case of consumer goods. Since no express warranties were alleged the first exception has no application to the instant case. The second exception might be applicable if the allegedly defective goods, (i. e., sandblasting hoods and respirators) were consumer goods. "Consumer goods" are defined in Section 7–9–109(1) *Ala.Code*, as goods which are "used or bought for use primarily for personal, family, or household purposes". Comment 2 states that:

the principal use to which the property is put should be considered as determinative. Goods can fall into different classes at different times; a radio is inventory in the hands of a dealer and consumer goods in the hands of a householder.

*Ala.Code* § 7–9–109(1) (1975)

■ Applying the above definitions to the facts in the instant case, this Court holds that sandblasting hoods and respirators are not consumer goods and that an action for breach of warranty must be commenced within four years of the tender of delivery of the goods.

■ Johnson and Love initially filed suit in August 1973 and Simmons filed in December 1974. It was not until December 9, 1975, that Clemco was brought into the suit under a separate cause of action based on breach of warranty. Regardless of when Simmons', Johnson's and Love's warranty causes of action accrued, neither can recover from Clemco for injuries and damages sustained prior to December 9, 1971. *Garren v. Commercial Union Insurance Co.,* 340 So.2d 764 (Ala.1976); *American Mutual Liability Insurance Co. v. Agricola Furnace Co.,* 236 Ala. 535, 183 So. 677 (1938).

■ The last date Transamerica provided any coverage for Clemco was on May 1, 1970. The only claims for which Employers' Reinsurance could have insured Clemco would be for injuries incurred between June 25, 1965, and February 1, 1971. Since neither Simmons, Johnson, nor Love can recover for any injury sustained on or before May 1, 1970, Transamerica's and Employer's Reinsurance's motion for summary judgment is due to be granted.

Additionally, two other defendants, Zurich American and Mission Insurance also had policies covering Clemco which expired more than four years prior to the commencement of any action against Clemco. Based on the foregoing, the Court will entertain similar motions for summary judgment in favor of those defendants.

It is therefore ORDERED, ADJUDGED and DECREED that the motions for summary judgment on behalf of Transamerica and Employer's Reinsurance should be and hereby are GRANTED.