MURDOCK, Justice
(concurring specially).
I concur to overrule the application for rehearing. I write separately for two reasons: (1) to offer additional comments regarding this Court’s response on original submission to the first certified question in this case and, (2) with respect to our answer to the second certified question, to address certain concerns expressed by the applicants for rehearing that are also addressed by Justice Shaw in his special writing on application for rehearing.
1. The First Certified Question
The following statement appears in American Law Reports:
“Since in a case of exposure to disease through the negligence of another, no one can know whether disease will result, and, if the exposure is to an occupational disease, the disease may develop only after months and years of repeated exposure, and even long after exposure has ceased, and, if it does develop, no one will be able to say at precisely what time it first existed nor exactly what exposure produced it, many cases, manifestly to escape the rigor and supposed general soundness of the idea that an action for negligence accrues at the time of the negligence ..., have evolved a theory whereby the continuing negligence is regarded as a single wrong against which the limitation period commences to run only from the time of cessation of the wrong, or cessation of the inhalation of the dust, gas, or fumes, or exposure to deleterious substance. ...”
*12 Annot., When Limitation Period Begins to Run Against Cause of Action or Claim for Contracting Disease, 11 A.L.R.2d 277, 289 (1950). This passage speaks of a “single wrong,” as well as a single limitation period — “the limitation period” — that commences to run only at the single point in time when that wrong ceases. Consistent with this passage, I had until this case been under the impression that Alabama’s “continuing tort” theory of recovery for long-term exposure to toxic substances, when applied in tandem with the last-exposure rule recognized in Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979), meant that, so long as a claim was filed within the period of limitations following the plaintiffs last exposure to the hazardous substance, the plaintiff could recover all damages referable to the malady resulting from the exposure to the hazardous substance at any time during the plaintiffs term of employment.
On original submission in this case, however, the Court stated that “[a] plaintiff injured by long-term continuous exposure to a toxic substance is limited to recovering damages attributable to injuries occurring within the period of limitations.” 103 So.3d at 11. A more careful review of the quoted passage from American Law Reports yields a possible explanation for the discord between it and our statement on original submission limiting the damages that can be recovered in a case governed by Garrett. The passage quoted from American Law Reports embraces a “single wrong” theory, and it does so based on the predicate that the plaintiffs injury may “develop” after exposure at some unknown and unknowable time. The analysis employed in Garrett, on the other hand, contemplates that the plaintiff actually suffers a physical injury when he or she suffers an exposure, even if that injury has yet to “develop” into something that is observable by the injured party.[1]
Moreover, my consideration of the present ease has brought to my attention Alabama cases governed by the last-exposure rule of Garrett, which as noted by the main opinion on original submission, presaged our answer to the certified question before us, i.e., that damages are limited to those resulting from injuries occurring within the limitations period. Thus, in the case of Minyard v. Woodward Iron Co., 81 F.Supp. 414, 417-18 (N.D.Ala.1948), the federal district court was able to state:
*13 “Under pertinent decisions of the Alabama courts, a recovery may be had for injury resulting from a continuous tort subject to the limitation that only damages which occurred within the period of limitations may be recovered, provided that the damages sustained within the statutory period are separable from those that are barred under the statute by the lapse of time. American Mutual Liability Ins. Co. v. Agricola Furnace Co., 236 Ala. 535, 183 So. 677 [ (1938) ]; Howell v. City of Dothan, 234 Ala. [158], 174 So. 624 [ (1937) ]; Lehigh Portland Cement Co. v. Donaldson, 231 Ala. 242, 164 So. 97 [(1935)]. Cf. Michalek v. United States Gypsum Co., 2 Cir., 76 F.2d 115 [ (1935) ]; Stornelli v. United States Gypsum Co., 2 Cir., 134 F.2d 461 [ (1943) ].”
(Emphasis added.)
In accord with this statement from Min-yard is the following statement by this Court in Garrett, itself:
“Among our cases, continuous tort cases are significant in the limitation of actions context. It was thus that in American Mutual Liability Insurance Co. v. Agricola Furnace Co., 236 Ala. 535, 183 So. 677 (1938), this Court held that recovery for a continuous tort could be had only for those damages which occurred within the period of limitations. See also Howell v. City of Dothan, 234 Ala. 158, 174 So. 624 (1937). The cause of action was, therefore, not barred by the statute of limitations until one year after the last day on which the plaintiff was exposed to the dangerous conditions which caused the injury. Minyard v. Woodward Iron Co., 81 F.Supp. 414 (N.D.Ala.), aff'd, 170 F.2d 508 (5th Cir. 1948). This was, and is, the rule in all eases concerning continuous torts in Alabama.”
368 So.2d at 521 (emphasis added).
It is as a consequence of such authority that I concurred in the main opinion’s response to the first certified question on original submission.[2]
2. The Second Certified Question
I first note that I agree with Justice Shaw that the decision in Cazalas v. Johns-Manville Sales Corp., 435 So.2d 55, 57 (Ala.1983), indicates a distinction for purposes of § 95, Ala. Const. 1901, between the ability of the legislature, by lengthening a statute of limitations, to revive a cause of action previously barred by lapse of time, and the ability of the legislature to legislate an expansion of the period as to which damages can be claimed in an action that is otherwise filed within a valid statutory limitations period. To the extent that Justice Shaw’s writing also hints at some concern about this disparate treatment, I would agree with that as well. Such disparate treatment appears to be in conflict with the principles discussed in Part 1 above. In particular, as the main opinion on original submission observed, 103 So.3d at 7 (quoting Cazalas, 435 So.2d at 57), the rule governing the period within *14 which injuries must have occurred to be recoverable “ ‘does not ... operate independently of the statute of limitations,’” but, “ ‘[t]o the contrary, it is a function the statute of limitations.’ ”
That said, I am reluctant to suggest merit in the defendants’ argument that the prohibition in § 95, Ala. Const. 1901, against “reviving” an “otherwise time-barred claim” placed some limit on the Court’s holding in McKenzie v. Killian, 887 So.2d 861 (Ala.2004), that a six-year limitations period was applicable to wantonness claims. Section 95 states that “the legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this state.” (Emphasis added.) I see nothing in this language that requires us to apply § 95 to judicial decisions. To the contrary, doing so would be at odds with the strong bias in favor of retroactive application of judicial decisions, a bias that is a function of the so-called “declaratory theory” of judicial review.[3]
It is correct, as the welding-rod manufacturers argue on rehearing, that McKenzie was “wrongly decided.” Nonetheless, it was decided. It thereby became the “law of the land.” And it remained so until it was overruled in Ex parte Capstone Building Corp., [Ms. 1090966, June 8, 2011] — So.3d-(Ala.2011). 
This Court’s bias in favor of retroactive application of judicial decisions, based on the declaratory theory of judicial review, has been explained as follows:
“ ‘Since the Constitution does not change from year to year; since it does not conform to our decisions, but our decisions are supposed to conform to it; the notion that our interpretation of the Constitution in a particular decision could take prospective form does not make sense.’ American Trucking Ass’ns, Inc. v. Smith, 496 U.S. 167, 201, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (Scalia, J., concurring).
“Even when this Court is not applying a rule of constitutional or statutory law, but is only addressing the effects of decisional law, our strong inclination is to avoid establishing rules that are to be applied prospectively only:
“ ‘Although circumstances occasionally dictate that judicial decisions be applied prospectively only, retroactive application of judgments is overwhelmingly the normal practice. McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156 (Ala.1996) (plurality opinion). “Retroactivity ‘is in keeping with the traditional fúñe *15 tion of the courts to decide cases before them based upon their best current understanding of the law.... It also reflects the declaratory theory of law, ... according to which the courts are understood only to find the law, not to make it’ ” 687 So.2d 156, quoting James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 535-36, 111 S.Ct. 2439, 2443-44, 115 L.Ed.2d 481 (1991).’
“Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 352 (Ala.1997).”
Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432 (Ala.2001).
Consistent with this declaratory theory, the Court in McKenzie made a declaration as to the meaning of an existing statute. It was not acting as a legislature.
“ ‘A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.’ ”
New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 370-71, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 53 L.Ed. 150 (1908)). This difference is the reason for § 95.

. The decision in Gairett was based on the notion that “damage must have occurred at the time of exposure else defendant would not be liable.” Garrett, 368 So.2d at 520 (some emphasis added). Accordingly, the Court reasoned, the statute of limitations for injury suffered as a result of radiation exposure "begins to run when the plaintiff is exposed to radiation and an injury occurs." 368 So.2d at 518 (emphasis added). See also William J. Bowers, Jr., Limitation of Actions — Industrial Diseases — Ignorance of a Cause of Action Will Not Toll Statute, 34 Tex. L.Rev. 480, 481 (1956):
”[I]t has been held that, even though the action was brought within the statutory period after the last exposure, the statute of limitation bars recovery except for aggravation of the condition within the statutory period. Pieczonka v. Pullman Co., 89 F.2d 353 (2d Cir.1937); Minyard v. Woodward Iron Co., 81 F.Supp. 414 (N.D.Ala.1948). These decisions in effect treat each exposure as an independent cause of action.”
(Emphasis added.) As the Ganett Court stated, "injury ... occurred on the date or dates of exposure.” 368 So.2d at 520 (emphasis added). It was on this basis that the Garrett Court, as discussed in the text that follows this footnote, could reason its way to a holding that, in effect, said no cause of action could be brought for any injuries if not brought within the limitations period following the last exposure, while at the same time maintaining the position that, even if a claim is timely filed under this rule, recovery may be had only for injuries experienced by the plaintiff within the limitations period.

. The main opinion on original submission stated:
"Under the continuous-exposure rule of Garrett, the statutory period of limitations for a continuous tort begins to run from the 'date of injury,’ 368 So.2d at 520, which is 'the last day on which plaintiff was exposed to the danger.’ Garren v. Commercial Union Ins. Co., 340 So.2d 764, 766 (Ala. 1976).”
103 So.3d at 5. Consistent with the foregoing discussion, I believe this characterization of the holding in Garrett would be more accurately phrased if it stated that, "[ujnder the continuous-exposure rule of Garrett, the [last] period of limitations [within which any claim can be brought for any injuries suffered as a result of an exposure logically begins to run on] ‘the last day on which plaintiff was exposed to the danger.’ "

. Aside from the defendants’ reliance on § 95, Justice Shaw notes their reliance on caselaw:
"The welding-rod manufacturers and am-ici curiae cite ... various cases in support of their position that a change in a statute of limitations, either directly by the legislature or indirectly by this Court, cannot operate to revive a cause of action already subject to the bar of a previous limitations period. See, e.g., Johnson v. Garlock, Inc., 682 So.2d 25, 27-28 (Ala. 1996); Ex parte State Dep’t of Revenue, 667 So.2d 1372, 1374 (Ala.1995); Crawford v. Springle, 631 So.2d 880, 881 (Ala.1993); and Lader v. Lowder Realty Better Homes & Gardens, 512 So.2d 1331, 1333 (Ala.1987).”
los So.3d at 16 (emphasis added). In point of fact, I can find no cases that support the emphasized portions of this position. Consistent with the wording of § 95, the four above-cited cases address only actual changes in statutes adopted by the legislature. None of these cases addresses or places any limitation on the ability of a court, under the declaratory theory discussed below, to declare the meaning of an already existing statute.