140 So.2d 832

### BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN

v.

James E. HAMMETT.

6 Div. 389.

Supreme Court of Alabama.

March 29, 1962.

Rehearing Denied May 17, 1962.

Harold C. Heiss and Russell B. Day, Cleveland, Ohio, and Erle Pettus, Jr., and Rives, Peterson, Pettus & Conway, Birmingham, for appellant.

Thos. F. McDowell and Geo. S. Brown, Birmingham, for appellee.

COLEMAN, Justice.

This is an appeal by a defendant, the Brotherhood of Locomotive Firemen and Enginemen, an unincorporated association, from a judgment rendered against it on the verdict of a jury in an action for compensatory and punitive damages. Plaintiff alleged that " * * * as a proximate consequence of the willful, malicious and wrongful interference with his right to earn a living, he was caused to lose his employment * * * " and the earnings he would have received, and that he suffered other damage proximately resulting from such interference with his employment.

As originally commenced, the action was against three defendants, namely: the appellant, Local Number 937 of the appellant union, and one J. B. Otts, Jr. On motion of the plaintiff, Otts was stricken as a party defendant. The jury returned a verdict against appellant but not against Local Number 937.

The amended complaint recites that between March 21, 1955, and June 30, 1956, plaintiff was an employee of the Louisville & Nashville Railroad Company, herein sometimes referred to as the L. & N., and a member in good standing of a labor union known as the Brotherhood of Locomotive Engineers; that on March 21, 1955, the defendants were on strike against the L. & N., which strike lasted until May 11, 1955; that during said period plaintiff's union was not on strike and plaintiff operated a locomotive for his employer; that shortly after said strike was over, plaintiff's employer promoted plaintiff to a management position known as a "traveling engineer"; that

" * * * During the months of June and part of July, 1955, agents, servants and employees of the defendants, while acting within the line and scope of their employment by the defendants wilfully, maliciously and wrongfully demanded that the plaintiff be removed from his position as 'traveling engineer' and taken off the property of the said employer because he had operated said locomotive as aforesaid during said strike. Plaintiff further alleges that the agents, servants and employees of the defendants while so acting as aforesaid wilfully, maliciously and wrongfully threatened said employer that they would strike if the plaintiff were not so removed and that said employer was forced by said threats to remove, and narrowly avoided a strike by removing, the plaintiff from his position. Plaintiff further alleges that on his removal from his position as 'traveling engineer' he was sent to Louisville, Kentucky, as assistant to the Master Mechanic where it was his duty to travel said employer's railroads and supervise the repair and maintenance of said employer's rolling stock; that during the period of his employment both as 'traveling engineer' and as assistant to the master mechanic there were numerous acts of violence or threatened violence on the part of the agents, servants and employees, of the defendants while acting as aforesaid that finally necessitated his employer to take him off the company property, the defendants agents, servants and employees,

while acting as aforesaid, having maliciously, willfully and wrongfully threatened to use every resource at the defendants' command to get rid of him because of his operation of a locomotive during the aforesaid strike. And plaintiff alleges that because it was unsafe for him to remain as assistant to the Master Mechanic of said employer, about the middle of February, 1956, his employer was again forced, as the proximate result of said violence and threats to remove him from said position and thereafter gave him employment as a temporary buyer of locomotives. Finally, as a proximate consequence of said violence and threats on the part of the defendant's agents, servants and employees, while acting as aforesaid within the line & scope of their agency or employment in behalf of the defendants his employer, though work was available to him as a traveling engineer, cut him from the payroll on to-wit: June 30, 1956, and his contract of employment with his said employer was destroyed."

There was no motion for new trial.

The appellant requested affirmative charges, with and without hypothesis, and the refusals thereof are severally assigned as error.

■ We do not understand that appellant controverts the proposition that an employee is entitled to recover compensatory and punitive damages from a defendant who maliciously and wrongfully causes the employee to lose his employment. Neither does appellant appear to deny the proposition that the requested affirmative charges were refused without error if there was sufficient proof from which a reasonable inference could be drawn that defendant wrongfully and maliciously caused plaintiff to lose his employment. Evans v. Swaim, 245 Ala. 641, 18 So.2d 400.

■ In this jurisdiction, the rule is firmly established that in civil cases the question must go to the jury if the evidence, or reasonable inferences arising therefrom, furnish a mere gleam, glimmer, spark, the least particle, the smallest trace, a scintilla, in support of the theory. Pappa v. Bonner, 268 Ala. 185, 188, 105 So.2d 87.

The question on this appeal, therefore, is to decide whether there was or was not a scintilla of evidence in support of plaintiff's theory.

Pertinent evidence tended to show that plaintiff's employment by the L. & N. commenced March 21, 1955, during a strike. Plaintiff was employed as a locomotive engineer. We understand that the appellant union was on strike, but that the union to which plaintiff belonged was not on strike. Appellant states in brief:

"* * * The two Brotherhoods are fierce competitors for the right to represent locomotive engineers and firemen in collective bargaining with the railroads."

The strike lasted 58 days and ended May 10, 1955, after which date plaintiff was employed by the L. & N. as a traveling engineer on the Nashville & Decatur Division of that railroad. Traveling engineer is a supervisory position. Appellant's general chairman, Paschall, was active in having plaintiff removed "from the N. & D. Division as Traveling Engineer," and a strike was threatened by appellant unless plaintiff was so removed. On July 11, 1955, plaintiff was removed from the position of traveling engineer and employed as Assistant to the General Master Mechanic. Plaintiff encountered various difficulties as traveling engineer and as Assistant to the General Master Mechanic as he traveled over the L. & N. system in performing the duties of his employment. As soon as his identity became known, there was a continuous "cat call," or throwing of something, or hammering on tables. There was a general disturbance wherever plaintiff appeared. In February, 1956, an incident occurred at Mobile, and shortly thereafter plaintiff was removed from the position of Assistant to the General Master Mechanic. Plaintiff's re-

moval was caused by violence and threats of violence which occurred when plaintiff's identity became known to personnel at places on the L. & N. system. Plaintiff continued on the L. & N. payroll until June 1, 1956, when he was discharged. There was work available for him as traveling engineer at the time of his discharge. This lawsuit was commenced March 21, 1957.

Appellant insists that it was entitled to the affirmative charge under its plea of the statute of limitations of one year. Appellant's argument is that the evidence fails to show any act on its part against plaintiff within one year next preceding the commencement of this action on March 21, 1957.

 Under the rule of the one-year statute, the time of limitation begins to run when the injury happens or damage accrues, and not from the date of the act causing the injury or damage. Corona Coal Company v. Hendon, 213 Ala. 323, 325, 104 So. 799. In the case at bar, plaintiff was not taken off the payroll of the L. & N. until June 1, 1956. He suffered no loss of employment prior to June 1, 1956, and, for one year thereafter, was not barred from maintaining an action to recover for damage resulting from such loss of employment. The instant action was commenced within that year and appellant's contention with respect to the statute of limitations is without merit.

Appellant's other contention is that it is entitled to the affirmative charge because " * * * there is a complete failure to prove that the defendant Brotherhood was responsible for or in any way connected with any violence and threats resulting in plaintiff's loss of employment."

Appellant appears to regard the violence and threats of violence as the gravamen of this action. The gravamen of this action is the malicious and wrongful causing of plaintiff to lose his employment. Evans v. Swaim, supra. In that connection there was evidence as follows:

On June 1, 1955, Jake Paschall, as General Chairman of the appellant union, signed and sent to the Director of Personnel of the L. & N. Railroad a letter which refers to plaintiff and his employment as traveling engineer, and with reference to the plaintiff recites in pertinent part as follows:

"The men of the N&D Division, engineers and firemen as well as at Birmingham have stated to me that he is an undesirable character as an official, and for that reason they are asking that he be removed as such.

"As stated to Mr. Stierstaedter this morning if you are not agreeable to granting this request, I will be glad to call and talk to you about it."

After receiving the letter, the witness Scholl, on June 8, 1955, representing the Director of Personnel, had a conference with Paschall and a Mr. Porch who was a vice-president of the appellant brotherhood. Scholl testified as follows:

"Q All right, now, just tell the Court what they said, and what you said in that conference, to your best recollection.

"A Of course, a whole lot was said, and I can't recall it all, but the note of the conference which I made was that we suggested since they didn't want to work with a man who had the record to which they referred, that we comb the System, or certainly this Division, and fire all men who had like criminal records, and take them all out of service, not just Mr. Hammett. That proposition, of course, was refused, and Mr. Porch made it very plain that we may as well make up our minds that Hammett had to go, that the Organization would use every resource at its command to accomplish that. Those are my own notes, because the discussion was kind of lengthy.

"Q Well, did Mr. Porch say anything about why he wanted Mr. Hammett fired?

"A Well, he abandoned the proposition kind of quickly about the cause of it being the criminal record, and it boiled down to the fact that the men refused to work with him because of the services he performed during the 58-day Strike."

On June 23, 1955, Paschall, as General Chairman, sent another letter to the Director of Personnel. With reference to plaintiff, the letter recites:

"This is to advise that unless he is removed from the N & D Division as Traveling Engineer by July 1st, 1955, it will be my purpose to vote the engineers and firemen, members of this organization, as to whether or not they will continue to work under this supervision."

Scholl testified that on July 10, 1955, he had another communication from Paschall wherein Paschall advised that a strike vote was being taken and one item of the vote was a request that plaintiff be removed from the N. & D. Division as traveling engineer. On the night of June 10, 1955, plaintiff was removed as traveling engineer. There was no strike. Paschall testified that a strike was never called, that a date for a strike was never set.

Shortly thereafter, plaintiff was given the position of Assistant to the General Master Mechanic, which required plaintiff to travel " * * * all over the System, from one end of the System to the other."

Appellant takes the position that the objections of its officials, that is, Paschall and Porch, to the employment of plaintiff as traveling engineer, were that they objected to plaintiff only " * * * on the N & D Division out of Nashville," and that appellant's officials did not object to plaintiff's employment elsewhere on the L. & N. system. When the witness Scholl was asked on cross-examination whether or not appellant's objections were so limited, Scholl testified that, to his best recollection, " * * * no one made it specific." Whether appellant's objections were so limited, was, in view of the evidence, a question for the jury.

There is testimony that two elections were held, one in July and one in August, 1955, to decide which union, appellant or the Brotherhood of Locomotive Engineers, should be the bargaining agent for certain employees of the L. & N., and that in seeking to influence the voters in those elections, appellant's representatives circularized certain letters, including the letter of June 23, 1955, from Paschall to Howard, which is mentioned and quoted from hereinabove. The defendant, Otts, admitted on cross-examination that

"A Our organization used as an argument that we had been responsible for Mr. Hammett's removal from the N & D Division as traveling engineer. Where he was placed otherwise, we weren't interested in it."

On July 25, 1955, Otts, as Local Chairman, wrote a letter protesting the placing of plaintiff's name, together with four others, on the S & N A's Engineer's Seniority Roster. Here again it was for the jury to decide whether appellant's effort was to remove plaintiff from the division or from the whole L. & N. system.

There is testimony that the defendant, Otts, Chairman of the Local Grievance Committee of the appellant in Birmingham, in August, 1955, informed the witness, Laney, " * * * that the B of L F & E, that they were going to have a strike, a system-wide strike to remove him." We understand that "the B of L F & E" refers to the appellant, and that the "him" refers to plaintiff. We also understand that Otts denied making such a statement. Otts testified that from approximately May 22 to September 1, in 1955, as we understand it, he was on leave from his employment by the L. & N. Railroad and, during that period, worked as a general organizer for the appellant union.

There is testimony that in February, 1956, plaintiff, in the course of his employment by the L. & N., went into its shops in Mobile; that "cat calls" and "booing" occurred; that bolts, nuts, and lumps of coal were thrown at plaintiff; that it took five or ten minutes to get plaintiff out of the shop to the office; that it was necessary to take plaintiff back through the shop and that again there were "cat calls" and profanity directed toward plaintiff; that a fireman said, with reference to plaintiff and the witness:

" 'There goes the — — — get them.' "

Plaintiff testified that after he was transferred from the job of traveling engineer to that of Assistant Master Mechanic he traveled around the L. & N. system three or four months; that he was subjected to threats; that, at each city or location, after his identity became known, there were cat calls or throwing of something; that these events occurred at Cincinnati, at Evansville, Indiana, at Owensboro, Kentucky, at Mobile and Nashville, and that plaintiff could not come to Birmingham.

■ There is contradictory testimony. We are not here concerned with the weight of the evidence. Under the familiar rule, we are required to view the evidence in the light most favorable to plaintiff, and to allow all inferences favorable to him which can reasonably be drawn from the evidence. Louis Pizitz Dry Goods Co. v. Harris, 270 Ala. 390, 118 So.2d 727. Viewing the evidence according to the rule, we are of opinion that the evidence affords at least a scintilla to support a reasonable inference that appellant maliciously and wrongfully caused plaintiff to lose his employment, and, therefore, that the affirmative charges requested by defendant were refused without error.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, and GOODWYN, JJ., concur.