368 So.2d 516 (1979)
Jerry Kenneth GARRETT and Claudell Weathers Garrett
v.
RAYTHEON COMPANY, INC.
77-606.
Supreme Court of Alabama.
January 26, 1979.
As Corrected on Denial of Rehearing March 16, 1979.
*517 Leo E. Costello, Birmingham, for appellants.
E. Ted Taylor, Prattville, President, Alabama Trial Lawyers Assn., R. Ben Hogan, Birmingham, for amicus curiae, The Alabama Trial Lawyers Assn., in support of application for rehearing.
Bibb Allen of London, Yancey, Clark & Allen, Birmingham, for appellees.
Thomas W. Christian, Pres., Ala. Defense Lawyers Assn., Birmingham, Harold F. Herring, Executive Vice-Pres., Ala. Defense Lawyers Assn., Huntsville, Stancil R. Starnes, Sec.-Treas., Ala. Defense Lawyers Assn., Birmingham, for amicus curiae, Alabama Defense Lawyers Assn., in opposition to application for rehearing.
BLOODWORTH, Justice.
When does the statute of limitations begin to run for injuries suffered as a result *518 of radiation exposure? We conclude that it begins to run when the plaintiff is exposed to radiation and an injury occurs. This was the trial court's conclusion when it held the plaintiff's claim was barred by the statute of limitations. We agree and affirm.
On February 17, 1978, appellant (plaintiff below) filed suit against defendants General Electric Corporation, Western Electric Company, Inc., Raytheon Company, P. R. Mallory Company, Inc., General Electric Company, Inc., American Telephone and Telegraph Company and South Central Bell Telephone Company, Inc.
In his complaint he alleges in "COUNT ONE" the following:
"3. Plaintiff Jerry Kenneth Garrett states that prior to 1955, Defendants and each of them so negligently and carelessly designed, manufactured, fabricated, installed, repaired and maintained certain radar systems, component parts of radar systems, and installations of certain radar systems so as to cause said systems to be in a dangerous and defective condition. As a result of the aforesaid dangers and defective condition, said units emitted dangerous radiation.
"4. From, on or about 1955 until on or about 1957, Plaintiff Jerry Kenneth Garrett was exposed to massive doses of the aforesaid dangerous radiation without Plaintiffs' knowledge and without Plaintiffs' consent. As a direct and proximate result of said exposure to said radiation, Plaintiffs sustained injuries and damages as set forth in Paragraphs 5 and 6 hereof.
"5. Plaintiff Jerry Kenneth Garrett suffered the following injuries and damages, to-wit: Plaintiff's hair fell out, his hair was caused to turn white, his facial and body hair was caused to fall out. His aging process has been materially altered. He has incurred reasonable expenses for the services of physicians, nurses, medicines, roentgenologists, and other related medical expenses, in a presently unascertained amount as the same are still being incurred. His risk of contracting cancer and leukemia have been greatly increased. His sexually active years have been materially shortened. Plaintiff has suffered humiliation, embarrassment, mental pain, anguish, anxiety, shock, and other injuries not presently diagnosed, the nature and extent of which Plaintiff will add by amendment when ascertained.
"6. Plaintiff Claudell Weathers Garrett claims loss of services, loss of consortium, and the loss of companionship of her husband who suffered the injuries and damages set forth in the previous paragraph hereof.
"7. Plaintiffs had no knowledge of the hazardous, dangerous, and defective condition of the aforesaid radar systems and of the harmful effects of radiation during the period of exposure. Plaintiffs did not know of the potential adverse medical effects of radiation exposure until the condition of Jerry Kenneth Garrett was diagnosed in March, 1977, when for the very first time, Plaintiff Jerry Kenneth Garrett was advised for the very first time that his rapidly deteriorating condition was due to said radiation exposure.
"WHEREFORE PREMISES CONSIDERED, Plaintiff Jerry Kenneth Garrett demands judgment in the sum of $500,000.00 . . .."
Count Two is in wantonness. Count Three is under the Alabama Extended Manufacturer's Liability Doctrine; Count Four alleges strict liability, while Count Five alleges negligence, wilfulness and wantonness; and Count Six avers that defendants negligently, wilfully and wantonly withheld information from plaintiff that the radar systems presented hazards.
Defendant Raytheon, appellee here, filed a motion to dismiss upon grounds of failure to state a claim upon which relief can be granted and the statute of limitations.
The trial court granted the motion to dismiss making the finding in compliance with Rule 54(b) whereupon plaintiff Garrett appealed.
The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause *519 of action "accrues." The cause of action "accrues" as soon as the party in whose favor it arises is entitled to maintain an action thereon.
"We have held that the statute begins to run whether or not the full amount of damages is apparent at the time of the first legal injury. In Kelly v. Shropshire, 199 Ala. 602, 75 So. 291, 292 (1917), the rule was stated as follows:
"`If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action. Nor does plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered.'
"Nor do the cases cited to us by appellant Home modify this rule. Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925) (flooding of basement causing rusting of heating plant) and West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909) (underground mining causing subsidence of surface land) merely state the well established rule that the statute will not begin to run until some injury occurs which gives rise to a maintainable cause of action.
"Reviewing the facts in this cause, we find that, as a result of the open space left in the roof, rainwater poured into the freezer and office of Schloss & Kahn on November 11, 1968; ice had to be removed with sledge hammers and shovels before the freezer could be used; the entire office had to be repainted; and finally, ice was discovered in the walls on December 17, 1968. Even without any subsequent damage, Schloss & Kahn as of December 17, 1968, at the latest, had suffered legal injury from the alleged negligent acts of November 8, so as to entitle it to maintain a cause of action against the third-party defendants. The statute of limitations began to run at that time."
Home Insurance Co. v. Stuart-McCorkle, Inc., 291 Ala. 601, 608, 285 So.2d 468, 473 (1973).
The class of cases exemplified by Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925), and West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909), expresses the same rule although in a different context, and the basic principle is the same. Thus, there are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiff's injury only comes as a result of, and in furtherance and subsequent development of, the act defendant has done. In such cases, the cause of action "accrues," and the statute of limitation begins to run, "when, and only when, the damages are sustained." Over sixty years ago, Justice Sayre so expressed it in his opinion for the Court in Kelly, et al. v. Shropshire, 199 Ala. 602, 75 So. 291 (1917).
In West Pratt Coal plaintiff's upper soil cracked open and settled down several years after mining had taken place beneath the surface. Plaintiff brought suit within one year after the soil settled. In stating that the statute had not run, the Court held that the plaintiff had nothing of which to complain until the enjoyment of the lot was interfered with by the settling of the soil, i. e., no cause of action had "accrued" until that time.
In Kelly, supra, this Court held that the statute of limitations had run against a plaintiff who sought damages more than six years after he had contracted with a surveyor to survey and map certain property and who, plaintiff claimed, had negligently mapped it. The Court held that plaintiff's ignorance of the injury, when there was no fraudulent concealment, did not postpone the running of the statute until the injury was discovered.
*520 The same rule has long been followed in this state with reference to medical malpractice. In Hudson v. Moore, 239 Ala. 130, 194 So. 147 (1940), this Court held, in an opinion authored by Justice Bouldin, that neither difficulty of ascertainment nor ignorance of the cause of action will toll the statute of limitations unless superinduced by fraud. In Hudson v. Moore, plaintiff sought damages in 1938 for an alleged negligent act in 1923 of leaving a gauze sponge in a patient's body after a gall bladder operation. The court held the statute had run.
As recently as 1972, this Court, in Sellers v. Edwards, 289 Ala. 2,265 So.2d 438 (1972), held that an action for malpractice for leaving in a bulldog clamp after surgery was governed by the medical malpractice statute of limitations, Act No. 766, Acts of Alabama, 1953, page 1027 [then found at Tit. 7, § 25(1), Code of Alabama 1940 (Recompiled 1958)]. That act specified a limitation of two years. The jury found for the defendant and on appeal the contention was made that there was error in the court's charge that if the jury were reasonably satisfied that the leaving of a clamp in the plaintiff's body was unintentional, the two year statute of limitations would apply and their verdict would be for the defendant. This Court held, in an opinion authored by Justice Maddox, that the evidence in the case was clear to the conclusion that the cause of action was governed by the two-year statute of limitations and that the giving of the charge, if error, was harmless.
It was noted in Sellers v. Edwards, supra, "* * * that the Legislature has the inherent power to determine the date and time within which an action may be brought unless the time fixed is clearly arbitrary or unreasonable." (Emphasis added.)
Thus, in Alabama the so-called "Discovery Rule" has been specifically rejected by this Court in medical and professional malpractice suits. Moreover, the legislature has adopted specific statutes of limitations with respect to the medical profession, as well as the engineering and architectural professions, and we have held that the enactment of such legislation is within the inherent power of the legislature. We cannot reject such long settled and mature authority out of hand.
The difference between our land subsiding cases, such as Corona Coal, and the instant case is that no injury occurred at the time of the mining in the Corona Coal case while in the instant case the damage must have occurred at the time of exposure else defendant would not be liable. It is simply that all the progressive nature of the injury has not made itself manifest at the time of the last exposure. But, we have held that the statute begins to run "whether or not the full amount of damages is apparent at the time of the first legal injury" or not. Home Insurance Co. v. Stuart-McCorkle, Inc., supra.
As Mr. Justice Faulkner's dissent correctly states, the statute begins to run from the date of injury. See Brotherhood of Locomotive Firemen & Enginemen v. Hammett, 273 Ala. 397, 140 So.2d 832 (1962).
In Garren v. Commercial Union Insurance Co., 340 So.2d 764 (Ala.1976), we defined "date of injury" for statute of limitations purposes to be the day on which the plaintiff was last exposed to the damages which injured her. Justice Faulkner points out that this definition was derived from the workmen's compensation act. It is incorrect, however, to assume that this ipso facto changes the definition of "date of injury" for non-workmen's compensation cases.
Section 25-5-117 (Code 1975) provides: "* * * The date of the injury shall mean, for all purposes of this article, the date of the last exposure to the hazards of the disease in the employment of the employer in whose employment the employee was last exposed to the hazards of the disease."
This provision was enacted in 1971. See Act No. 668, Acts of the Legislature 1971, vol. II, p. 1379.
The injury in this case occurred on the date or dates of exposure. This is not a *521 case where an injury did not occur until it made itself manifest by its symptoms. Among our cases, continuous tort cases are significant in the limitation of actions context. It was thus that in American Mutual Liability Insurance Co. v. Agricola Furnace Co., 236 Ala. 535, 183 So. 677 (1938), this Court held that recovery for a continuous tort could be had only for those damages which occurred within the period of limitations. See also Howell v. City of Dothan, 234 Ala. 158, 174 So. 624 (1937). The cause of action was, therefore, not barred by the statute of limitations until one year after the last day on which the plaintiff was exposed to the dangerous conditions which caused the injury. Minyard v. Woodward Iron Co., 81 F.Supp. 414 (N.D.Ala.), aff'd, 170 F.2d 508 (5th Cir. 1948). This was, and is, the rule in all cases concerning continuous torts in Alabama.
In the recent cases of Harig v. Johns-Manville Products Corp., [1978, Court of Appeals of Maryland] 394 A.2d 299, and Raymond v. Eli Lilly & Co., 371 A.2d 170 (N.H.1977), it was noted in the opinions that the courts in those states had already recognized the "Discovery Rule" before it was extended to products liability cases. Although both are well reasoned opinions, they are based on those states' recognition of a rule which has been specifically rejected by Alabama courts for the past 60 years.
It may be that Alabama's rejection of the "Discovery Rule" is contrary to the weight of opinion generally. However, as this Court is committed to the proposition that the legislature has the inherent power to establish statutes of limitation, we have no other alternative than to leave it to the legislature to abrogate this rule and adopt a more equitable one should it see fit, so that a plaintiff's claim will not be barred when he has no way to ascertain that he has been damaged by a deleterious substance because the result has not manifested itself until the statute of limitations has run.
Of course, Alabama does recognize that a fraudulent concealment by a defendant tolls the running of the statute until the tort or injury is discovered or could have been discovered by due diligence. Although plaintiff purports to make an effort to allege fraud in Count Six, the allegations fall far short of the requirements of Rule 9, A.R.C.P., that fraud be alleged "with particularity." For instance, the count fails to allege that the failure to disclose was materialthat defendant knew the hazards were harmful to plaintiff that they permitted him nevertheless to be exposed to the hazardswhich he did not discover nor could he have discovered with reasonable diligence until the statute had run.
It is thus that we hold that the statute of limitations of one year began to run when plaintiff was last exposed to radiation and plaintiff's ignorance of the tort or injury, there being no fraudulent concealment, does not postpone the running of the statute until the tort or injury is discovered. If plaintiff was not injured in 1955-1957, then defendant committed no negligent act at that time which resulted in injury and defendant would not be liable. If plaintiff did become injured or damaged at that time, then the statute of limitations has run.
To reach the result espoused by the dissenters, however laudatory and attractive it may appear to be, would require overruling dozens of Alabama cases and departing from well-established principles of law laid down over the past 60 years. Moreover, and more importantly perhaps, it would result in usurping the inherent power of the legislature.
AFFIRMED.
TORBERT, C. J., and MADDOX, ALMON and EMBRY, JJ., concur.
FAULKNER, JONES, SHORES and BEATTY, JJ., dissent.
FAULKNER, Justice (Dissenting).
I dissent.
The majority by their opinion have ignored the Constitution of Alabama, 1901, and have garbled the meaning of when a statute of limitations begins to run.
*522 To the question, "When does the statute of limitations begin to run for injuries suffered as a result of radiation exposure," the majority answers that the statute begins to run when the plaintiff is exposed to radiation and an injury occurs. Well, when, pray tell, does an injury occur when one is exposed to radiation? At the time of exposure? One year after exposure? 10 years? 20 years?
In the posture of this case, can the question be answered realistically, logically or legally? I say no. Under the majority reasoning, "the man who buries a time bomb" could argue successfully "that he could not be held responsible for a resulting death because the explosion and death of his victim did not occur until more than a year after he placed the bomb." Cf. Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959).
The problem of radiation exposure is one that does not fit squarely into traditional legal concepts, for the nature of the injuries is such that they are often not manifested until many years after exposure. This is the case here. Garrett was allegedly exposed to radiation from 1955 to 1957, but his first physical problems did not appear until March, 1975. The circuit court granted defendant's motion to dismiss on the theory that Garrett's claims were barred by the statute of limitations and entered its order as a final judgment. I would reverse.
In 1955, 1956, and 1957 Garrett, a staff sergeant in the U.S. Army, was stationed at Fort Bliss, Texas, as a radar instructor. At that time he was allegedly exposed to massive quantities of radiation without his knowledge or consent. In March, 1975, a solid patch of hair fell out of his head and he began to experience other physical problems such as increased aging and loss of body hair. Garrett consulted numerous doctors but the nature of his problem was not discovered until March, 1977, when a radiologist determined that the cause of his medical problems was exposure to radiation while in the Army. His prognosis was rapid aging, an unusually high probability of contracting leukemia and cancer, and a materially shortened life expectancy.
On February 19, 1978, Garrett and his wife filed suit against Raytheon Co., Inc. and several other corporations. The complaint seeks a total of $5,075,000 in damages and alleges negligent, careless, and wanton design, manufacture, fabrication, installation, repair and maintenance of certain radar systems as well as negligent failure to conduct proper tests and the negligent, willful, and wanton withholding of information relative to the hazards presented by the radar systems. Additional counts sought recovery under the Alabama Extended Manufacturer's Liability Doctrine and for strict liability in tort.
There is no question that this suit is governed by § 6-2-39(a)(5), Code Ala.1975, which states: "The following must be commenced within one year: . . . Actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section." This statute is, of course, read in conjunction with § 6-2-30, Code Ala.1975, which states: "All civil actions must be commenced after the cause of action has accrued within the period prescribed in this article and not afterwards, unless otherwise specifically provided for in this Code." Thus the question for this Court is when does a cause of action for radiation exposure accrue. The majority holds that Garrett's cause of action accrued at the time of exposure. Garrett asserts that the cause of action cannot accrue until the injury manifests itself thereby giving an individual notice that a possible tort has been committed.
In determining when a cause of action for personal injury accrues this Court has established the rule that "the time of limitation begins to run when the injury happens or damage accrues, and not from the date of the act causing the injury or damage." (Emphasis added.) Brotherhood of Locomotive Firemen & Enginemen v. Hammett, 273 Ala. 397, 401,140 So.2d 832, 834-5 (1962). That principle was reaffirmed in Garren v. Commercial Union Insurance Co., 340 So.2d 764 (Ala.1976) where we noted that the one year period applies to injuries resulting from continuous exposure to *523 harmful events, such as repeated blasting or flooding. In Garren this Court defined the date of injury as "the last day on which plaintiff was exposed to the danger." 340 So.2d at 766. Defendant urges, and the majority agrees, to apply this same definition of "date of injury" to situations involving radiation exposure. For the reasons detailed below I decline to extend Garren's definition of date of injury to the case at bar.
First, it is apparent that the definition does not logically follow from the rule of accrual set out in Hammett. That case specifically stated that a cause of action does not accrue from the date of the act causing the injury or damage. That, however, is the net result of applying Garren's definition of date of injury. In fact, Garren's definition was derived from the workmen's compensation act, as specifically noted in that case. Section 25-5-117, Code Ala.1975, states: "The date of the injury shall mean, for all purposes of this article, the date of the last exposure to the hazards of the disease in the employment of the employer in whose employment the employee was last exposed to the hazards of the disease." Garren logically referred to the statutory definition of date of injury for that case involved a statutory claim arising under the workmen's compensation act. Ms. Garren, permanently and totally disabled from continuously breathing dust and lint, had already collected compensation benefits from her employer and was bringing a third party action pursuant to § 25-5-11. Consequently, this Court in its holding kept her statutory third party action in line with the statutory scheme of the workmen's compensation act.
Workmen's compensation, however, is in no way involved in this case. Garrett is seeking recovery for alleged common law torts. Defendant, nevertheless, points to § 25-5-197 of the workmen's compensation act which deals specifically with occupational exposure to radiation, and seeks to apply its definitions to Garrett's common law claims. That statute provides in pertinent part:
"In case of occupational exposure to radiation, as defined in this article, or of injury or disability resulting therefrom, all claims or compensation shall be forever barred, unless within one year after the employee first suffered disability therefrom and either knew or in the exercise of reasonable diligence should have known that the disability was caused therefrom, but in no event more than three years after date of the injury as hereinafter defined, the parties shall have agreed upon the compensation payable under this article, or unless within such period of time one of the parties shall have filed a verified complaint as provided in section 25-5-88. . . . The `date of the injury' shall mean, for all purposes of this article, the date of the last exposure to the hazards of radiation in the employment of the employer in whose employment the employee was last exposed, within a period of five years prior to the date of the injury, to the hazards of radiation in each of at least 12 months."
An inherent feature of this statute is that it establishes a maximum time limit of three years from the date of last exposure. I note, however, that the leading authority in this field, in what remains the seminal article on statute of limitation problems in radiation exposure cases, has observed that even a ten year overall limitation period "is unrealistic in view of current scientific knowledge of the delayed biological effects of nuclear radiation." Estep and Van Dyke, Radiation Injuries: Statute of Limitation Inadequacies in Tort Cases, 62 Mich.L.Rev. 753, 790 (1964). Consequently, to engraft this statutory scheme onto unrelated common law claims is illogical and unsupportable.
Thus we come back to the underlying difficulty in this case: the nature of radiation exposure and its resulting injuries. Unlike blasting and flooding, more familiar continuous exposure torts, an individual may be exposed to radiation without his ever knowing it or having an opportunity to discover it in the exercise of the utmost diligence. See G. Hutton, Legal Considerations *524 on Ionizing Radiation 35 (1966). We are dealing here instead with an insidious "silent trespass." Unlike Ms. Garren's pulmonary problems, radiation injuries often do not manifest themselves until many years after exposure. An individual may lead a normal, healthy life for years without apparent physical damage and then suddenly experience visible effects of radiation exposure. See B. Stason, S. Estep, & W. Pierce, Atoms and the Law 17 (1959).
Under these circumstances, the only justifiable and logical application of the statute of limitations is an adherence to our traditional rule of accrual, that the time of limitation begins to run when the injury happens or damage accrues, with an injury "happening" when physical damage manifests itself. Paraphrasing the United States Supreme Court, to hold otherwise "would mean that at some past moment in time, unknown and inherently unknowable even in retrospect" Garrett was charged with knowledge of the "slow and tragic disintegration" of his health. His "failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability." Urie v. Thompson, 337 U.S. 163, 169, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949). Such a result would fly in the face of our constitutional provision ". . . that every person, for any injury done him, in his . . . person . . . shall have a remedy by due process of law . . ." Ala.Const. of 1901, Art. I, § 13.
A further problem presents itself and it is exemplified by Garrett's own situation as he describes it. Basically, Garrett claims that although his first "injury" appeared in March, 1975, when a patch of hair fell out of his head, his problem was not diagnosed until two years later. Difficulty of diagnosis is a natural concomitant of injuries resulting from an act some twenty years before. Thus, to prevent a plaintiff's remedy from being wholly elusive, I would hold that the cause of action accrues and the statute of limitations begins to run when the injury happens and damage accrues, provided that the plaintiff knew or in the exercise of reasonable diligence should have known the nature of his injury or illness. Under this caveat, the statute is tolled only for those plaintiffs who made a serious attempt to determine the nature of their illness but were unable to do so for reasons beyond their control. See Estep and Van Dyke, supra at 767.
By my holding, I am mindful that the "discovery rule" has gained prominence in recent years in situations where plaintiffs have not suffered discoverable injury until sometime after the acts which in fact caused the harm. The rule has been adopted in this state for medical malpractice, § 6-5-482, Code Ala.1975. Our workmen's compensation statute applies it in a limited form to occupational diseases, § 25-5-117, Code Ala.1975, and occupational exposure to radiation, § 25-5-197, Code Ala.1975, quoted supra. Numerous cases from various jurisdictions have applied the discovery rule to injuries and diseases analogous to those allegedly suffered by Garrett. In Florida, the discovery rule allowed a plaintiff to recover for injuries resulting from exposure to x-rays five years prior to suit. City of Miami v. Brooks, 70 So.2d 306 (Fla.1954). Compare Buck v. Mouradian, 100 So.2d 70 (Fla.App.1958), where an action for excessive exposure to x-rays was not allowed as plaintiff admitted she had visible burns at the time of exposure five years before. The discovery rule governs in claims under the Federal Employers Liability Act as held in Urie v. Thompson, supra, a case which has often been cited as the "enlightened view" when state law was not clear. See also Brush Beryllium Co. v. Meckley, 284 F.2d 797 (6th Cir. 1960) (berylliosis, Ohio law not clear); Ricciuti v. Voltarc Tubes, Inc. 277 F.2d 809 (2d Cir. 1960) (berylliosis, Conn. law); U. S. v. Reid, 251 F.2d 691 (5th Cir. 1958) (medical malpracticefailure to advise of incipient tuberculosis, Ga. law under Federal Tort Claims Act); Sylvania Electric Products v. Barker, 228 F.2d 842 (1st Cir. 1956) (berylliosis, Neb. law); American Airlines, Inc. v. McCombs, 555 P.2d 1028 (Okl.1976) (chemical bronchitis, *525 early emphysema, and early pulmonary fibrosis); Consolidation Coal Co. v. Brown, 474 S.W.2d 416 (Tenn.1971) (silicosis); Inland Steel Co. v. McCarey, 467 S.W.2d 137 (Ky.1971) (silicosis); Hutchinson v. Semler, 227 Or. 437, 361 P.2d 803 (1961) (silicosis); Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959) (sponge left after surgery). Most recently the Court of Appeals of Maryland applied the discovery rule to an action for cancer allegedly resulting from exposure to harmful asbestos over a period of fifteen years ending in 1955. Harig v. Johns-Manville Products Corp., 394 A.2d 299 (Ct.App.Md., 1978).
I recognize that my result would force defendants into the difficult position of defending actions taken years before. This hardship, however, does not operate against the defendant alone. Garrett would have to prove that acts twenty years ago took place and caused his injuries. It would be a difficult action to prosecute, but I feel that, in light of the avowed public policy of this state as expressed in our Constitution, he ought, at least, to have the opportunity to present his claims in a court of law.
I would reverse.
BEATTY, J., concurs.
JONES, J., concurs in the result.
JONES, Justice (Dissenting):
I concur in the result of the dissenting opinion of Mr. Justice Faulkner. I agree fully with what he has written except for his analysis of Garren v. Commercial Union Insurance Co., 340 So.2d 764 (Ala.1976). He states that ". . . Garren's definition [of date of injury] was derived from the workmen's compensation act, as specifically noted in that case. The confusion that led Mr. Justice Faulkner into an attempt to rationalize "around" Garren is the fact that Garren references Tit. 26, § 313(42), Ala. Code 1958, for the proposition that "The date of injury is the last day on which plaintiff was exposed to the danger."
Although I concurred in Garren (and I have not changed my mind), had I been more careful in my study of this opinion, I would have influenced my Brothers to delete this definition from the opinion, or else I would have concurred specially. Not only is the reference to § 313(42) misplaced, but the definition of date of injury is itself misleading; and this is evidenced by the last sentence of the opinion which limits the plaintiff's damages to those injuries suffered by her during the last day of her employment within the statutory period of limitations. But the reference to § 313(42) is misplaced because the third-party common law action in Garren does not draw upon the Workmen's Compensation Act for its definition of date of injury. Indeed, if it did, the partial summary judgment should have been reversed and the damages recoverable upon trial if any would have been for the full injuries incurred and not merely for those incurred during the twelve months next preceding the filing of the complaint. Then, too, Garren is not a "discovery of injury" case.
Perhaps even more disturbing than the rejection of the discovery rule, however, is the majority's failure to follow the current well-established rule that no cause of action arises until injury results. We do not know from this "motion to dismiss" posture when the injury occurred. That this fact question is consumed by the majority as a matter of law is eloquently expressed in Ms. Justice Shores' dissenting opinion.
SHORES, Justice (dissenting):
I agree that this court, many years ago, rejected the "discovery rule" in a number of cases. I also agree that the statute of limitations normally begins to run when the cause of action accrues. A cause of action for personal injury accrues when injury proximately results from the negligent act of the defendant. In this case, the allegations are that the plaintiff suffered various injuries at an unstated time. The complaint charges the defendant with wrongful acts prior to 1955. It does not state when those acts resulted in injury to the plaintiff. It merely alleges that he was unaware of the cause of those injuries until that cause was diagnosed in 1977.
*526 Under these allegations, I cannot say that the suit was not brought within the time provided by law from the date of the injury. If the suit was filed within the statutory period measured from the date the injuries were suffered by the plaintiff, it is timely. This, however, is a fact question not resolved by this record. The majority would equate exposure to radiation with the injury. This may or may not be so and this, too, is a fact question. As I understand our cases, they have consistently held that no cause of action arises until injury results. The majority opinion assumes that the injury occurred simultaneously with the plaintiff's exposure to the radiation. The defendant's exposure of the plaintiff to radiation would not create a cause of action in the plaintiff until injury resulted from that exposure.
Cases of this kind present difficult questions and frequently courts are called upon to resolve them with rules not designed for such questions. In view of the result reached by the majority, I join my brothers in inviting the Legislature to adopt a rule to apply in cases like this; but, in the meantime, I would adhere to the traditional rule that treats the date of the injury as the date from which the statute commences to run.

On Rehearing
OPINION CORRECTED. APPLICATION FOR REHEARING OVERRULED.
TORBERT, C. J., and BLOODWORTH, MADDOX, ALMON and EMBRY, JJ., concur.
FAULKNER and BEATTY, JJ., dissent.
Dissenting opinion by JONES, J., extended.
JONES, Justice (dissenting):
On original deliverance, my dissent was prepared before the majority opinion was supplemented to include its reference to Garren. I addressed only what I perceive as an erroneous reference to Garren in Mr. Justice Faulkner's dissent, with which I am otherwise in agreement. Mr. Justice Faulkner's reference is an attempt to "write around" Garren into which he was unwittingly led by Garren`s misreference to § 25-5-117.
Garren is a common law "products liability" case. In Garren, the only statute of limitations issue involved is whether plaintiff is barred from recovery of all damages incurred within the last twelve months except for one-day's exposure where she waited until the last day of the one-year period to file suit. The trial court granted partial summary judgment excluding all damages except for the remaining one day within the one-year period since the last date of exposure. Our holding, in affirming, comports completely with the common law rule of Agricola and Minyard, cited by the majority. Garren`s reference to § 25-5-117 is unfortunate and misplaced. If this section is applicable in a non-workmen's compensation context, the summary judgment in Garren could not have been affirmed. Indeed, if Garren were a workmen's compensation case (an unwarranted assumption), the issue there addressed could not have arisen, because in that event the employer would never have contended that any portion of the plaintiff's claim was barred. The avowed purpose of § 25-5-117 (including § 25-5-147 and § 25-5-197) is to conform insidious disease injuries to workmen's compensation concepts by statutorily equating last date of exposure to date of accidental injury.[1] And, in so doing, plaintiff's recovery is limited by the statutory scheme of benefits without further apportionment of damages measured by the unexpired portion of the period within which the claim is filed. This changed the common law materially: It statutorily fixed the date of injury into a date certain; whereas the common law rule leaves this fact question of date of *527 injury, and thus date of accrual of the cause of action, for individualized determination.
The defendant in Garren (not the employer but a third-party defendant) did not contend that the cause of action was barred by the one-year statuteonly that recovery was barred for that portion of the injury resulting from defendant's alleged negligent acts more than one year before the filing of the suit. Our holding, in affirming the partial summary judgment, necessarily accepted this contention.
In sum, Garren represents the ultimate in legal incongruities: On the one hand, its holding correctly applies the common law continuing tort apportionment of damages rule (allowing recovery of damages resulting from the wrong inflicted within the period of limitationsone day); while on the other hand, its holding is grounded on the date of injury definition statutorily prescribed for workmen's compensation cases (allowing full scheduled recovery regardless of the date of filing within the statutory period). The difference between one day and 364 days makes no difference in a workmen's compensation case. In a nonworkmen's compensation case, for insidious disease (continuing tort), each day that expires from the last date of injury carries with it a bar to one day's claim. How can anyone fail to understand that this is the precise holding of Agricola?
It is evident that the trial bar of this State does not misunderstand it. So well is this distinction understood that it has never been contended, by the most ardent defense counsel, that the workmen's compensation claimant who files his claim on the last day of the one-year period following his last day of exposure is entitled to one cent less in benefits than the equally disabled claimant who files on the first day following his exposure. But no defense lawyer worth his salt would fail to make this contention in the same factual context in a non-workmen's compensation case. Indeed, this is precisely what was contended in Garren. That my power of articulation is so weak that I cannot explain this simple and elementary concept, and the factual context in which it is presented in Garren, is frustrating; but I tried.
My frustration is further compounded by the fact that this side issue is purely peripheral to the central policy issue here presented. It is not my purpose here to redebate the "discovery of injury" theory. With this policy issue already resolved, my efforts are directed solely to improving the quality of the opinion. In this same spirit, then, I suggest to the student of the law of torts that he read the majority opinion as if it contained no reference to the statutory date of injury definition or that such reference is surplusage and totally unnecessary to the opinion.
When so read, its holding is legally defensible. It says that each day of Plaintiff's exposure constitutes a consummated injury; and, thus, the statute of limitations of one year commences to run on that date. As to Plaintiff's knowledge of such injury, it is analagous to the surgical scalpel left in the operation incision. There is no chain of events yet to flow from the negligent act to subsequently inflict the injury. All elements essential to the accrual of the cause of action are completed contemporaneously with each exposure.
It is unlike the underground mine situation where the overlaying surface property is damaged ten years (for example) after the last alleged negligent act of the mine operator. There, the alleged negligence subsequently set into motion an additional chain of events (decaying timbers, rock falls, and, ultimately, surface breaks, etc.) which did not culminate in injury until some subsequent time. Thus, the accrual of the cause of action did not occur until the subsequent injury. But, here, the injury and the exposure occurred at the same timenot as a question of fact, but as a matter of law. The fact that the injury may progress, or that its progression may not be of sufficient severity to manifest itself until years after the last date of exposure, does not alter the fact that an injury requisite to accrual of the cause of action has occurred contemporaneously with the exposure.
The holding of the majority, when so interpreted, is logical and with precedential *528 support; but it is not without serious and overwhelming problems. It reduces date of injury (and thus accrual of the cause of action) to a legal conclusion without regard to when the injury in fact occurs. The holding of the majority says, or it may be fairly interpreted to say, that one so exposed can bring his action within the year of last exposure and be entitled to at least nominal damages without medical proof of radiation damageinjury being presumed as a matter of law; or, having timely filed his claim, he may be able to delay trial to await the manifestations of injury and medical proof.[2] But this, at least in part, is the other side of the policy question. In a purely philosophical vein, perhaps the holding will serve as an added impetus to those who advocate abolition of all radiation facilities. At any rate, for now Alabama's victims of radiation exposure, whose injuries are not manifested within one year, are denied relief.
NOTES
[1] Garren refers to § 25-5-117 (old Tit. 26, § 313(42)), which relates to occupational diseases other than pneumoconiosis and radiation. Garren involves inhalation of minutes particles of cotton lint (byssinosis), a lung disease of the pneumoconiosis group covered by § 25-5-147, assuming the applicability of the Workmen's Compensation Act.
[2] The medical literature seems to indicate that, except in cases of extreme exposure (in which the injury is readily apparent), exposure victims, including those whose injury will ultimately result in total disability and death, show no pathological evidence of radiation damage until many years following the last exposure.

Query: What constitutes injury? Who should make this determination: The legal community or the scientific community? The answer to this question is the point of our difference. The majority obviously feel more qualified to answer this query than I do.